IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JUAN MIGUEL PEREZ-DE MALAS,<br><br>Defendant | Criminal No.:12-549 (DRD) |

### OPINION AND ORDER

On January 25, 2013, a Sentencing Hearing was held for Defendant Juan Miguel Perez-De Malas. Therein, Defendant requested a two-level decrease pursuant to U.S.S.G. § 3B1.2(b) alleging that his participation in the conspiracy was minor.[1][2] To determine Defendant's role in the instant drug conspiracy, the Court heard testimony from Special Agent Fernado Gomez of the Drug Enforcement Administration ("DEA") and Defendant himself.

From the testimony of Special Agent Gomez and Defendant Perez-De Malas, the Court learned that Defendant came to Puerto Rico from Miami, Florida with his boss and his boss' wife in July of 2012. For several days prior to the drug transaction, the three of them stayed together

---

[1] Upon a finding that Defendant was a minor participant in the relevant criminal activity, the guidelines authorize the sentencing court to decrease the offense level by two levels. USSG § 3B1.2(b).

[2] The First Circuit has stated that:

> A defendant who seeks a downward adjustment due to an ostensibly mitigating role in the offense of conviction bears the burden of proving his entitlement to that reduction. He must carry that burden by a fair preponderance of the evidence. When a defendant seeks a downward adjustment for a minor role, the necessary showing entails proof both that he is less culpable than most of those with whom he collogued and that he is less culpable than the mine-run of other miscreants who have committed similar crimes.

United States v. Quinones-Medina, 553 F.3d 19, 22 (1st Cir. 2009)(internal citations omitted).

in the same hotel rooms in San Juan and in Ponce, including staying at the luxurious Ponce Hilton hotel. The boss and his wife paid for these hotel rooms as well as Defendant's meals. In terms of the drug transaction, Defendant was to drop off $58,600 in exchange for 35 kilograms of cocaine and return several hours later and deposit another $45,000; thus, the total amount he had planned to drop off was $105,000. The approximate street value of 35 kilograms of cocaine is $570,000. In exchange for these services, Defendant was to be paid $2,500.[3]

Based on the record and testimony presented, the Court cannot conclude that Defendant was merely on the periphery of the drug conspiracy. Defendant exercised individual control over how and when to move the money and drugs belonging to the drug trafficking organization. Defendant arrived alone at the designated meeting point carrying $58,600 in cash in order to pick up 35 kilograms of cocaine. Thus, Defendant was entrusted with nearly $60,000 and was going to be entrusted to handle more than half a million dollars worth of narcotics. Defendant agreed with the undercover agent to provide the remaining $45,000 of the transportation fee in a few hours and

---

[3] The United States proffered that individuals seeking to purchase multi-kilograms of cocaine in Puerto Rico provided an undercover DEA agent with a telephone number. (Docket No. 39). On the weekend of July 7th and 8th of 2012, the undercover agent called the number and reached an individual who identified himself as "Sobrino." The agent and Sobrino reached a deal where Sobrino would purchase 35 kilograms of cocaine for an initial payment of $3,000 per kilogram for a transportation fee and the final purchase price would be $16,500 per kilogram. Thus the initial fee was $105,000 and the purchase price was $577,500, which was to delivered at a later date after the sale of the cocaine. Defendant was <u>not</u> the individual identifed as Sobrino on the July 7th and July 8th calls.
   On July 9, 2012, Defendant used the same telephone number as over the weekend and indicated that he was Sobrino. Defendant also stated that he would only bring $60,000 as a partial payment for the transportation fee with the remaining $45,000 would be provided within a few hours.

Defendant agreed to take personal and sole control over the 35 kilograms of cocaine.  To the Court, it is highly unusual within a drug trafficking organization that such large amounts of currency and drugs are handled by lower level members of the drug conspiracy.  The Court briefly explains.

In addition to ultimately handling upwards of $700,000 in cash and goods for the drug trafficking organization, Defendant traveled to Puerto Rico; coordinated with other co-conspirators to pick up the drugs; collected the requisite funds to complete the transaction; convinced the undercover agent to accept partial payment of the transportation fee; and subsequently delivered those funds to the agent.  Defendant also drove the car containing the money to purchase the drugs; initiated contact with the undercover agent; inspected the drugs for pick up; and followed the undercover agent to a second location where Defendant expected to complete partial payment for the drugs and take possession of the 35 kilograms of sham cocaine.  The Court finds by a preponderance of the evidence, pursuant to United States v. Quinones-Medina, 553 F.3d at 22, that Defendant was intimately involved in executing the central aim of the conspiracy and was not a minor or peripheral participant.

Moreover, the Court notes that the drug trafficking organization flew Defendant to Puerto Rico and paid for his meals and lodging.  Defendant also ate and slept in the same hotel room as a presumed high ranking member of the organization.  Defendant's close proximity to this purported ringleader supports the finding that Defendant was not

a mere drug courier; instead, Defendant was a highly trusted member of the drug trafficking organization.

Accordingly, the Court hereby determines by a preponderance of the evidence that Defendant has not carried his burden of proving that he is "(i) less culpable than most other participants in the offense of conviction, and (ii) less culpable than the average miscreant involved in offenses of the same genre." United States v. Sanchez, 354 F.3d 70, 74 (1st Cir. 2004).  Hence, the Court declines to provide a downward adjustment for a minor participant role under U.S.S.G. § 3B1.2.

Finally, the Court sets the continuation of Defendant's Sentencing Hearing for Friday, February 22, 2013 at 9:00 AM in Courtroom 4 of the José V. Toledo U.S. Post Office and Courthouse in Old San Juan.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 15th day of February, 2013.

/s/ DANIEL R. DOMÍNGUEZ

DANIEL R. DOMÍNGUEZ
U.S. District Judge